# EXHIBIT D

# Illinois Nonprofit Principles and Best Practices 2020







**Charitable Trust**

ILCharitableTrust.com · CharitableTrust@illinoistreasurer.gov

James R. Thompson Center
100 West Randolph Street (Suite 15-600)
Chicago, IL 60601

Message from the State Treasurer

On behalf of the State of Illinois, we thank you for your hard work to improve the lives of people around our great State. A healthy and vibrant nonprofit community adds untold value and unmatched services to Illinois.

We are so happy to partner with Forefront to help produce *The Illinois Nonprofit Principles and Best Practices* booklet. The lessons and insights provided can make sure your nonprofit is as effective as possible.

As Treasurer, it is my pleasure to administer the Charitable Trust Stabilization Fund, which to date has provided grants to 100 organizations across Illinois. As Treasurer, I made it a priority to make sure the long-dormant program was serving its intended purpose: to support the work of our great nonprofits.

The Treasurer's Charitable Trust program will be accepting grant applications again starting January 2, 2020. For more information about this program, we encourage you to visit our website, https://illinoistreasurer.gov/Office_of_the_Treasurer/Charitable_Trust.

Thank you, and please feel free to reach out to our office with any questions.

Sincerely,

Michael W. Frerichs
Illinois State Treasurer

Charitable Trust Stabilization Committee
Illinois State Treasurer Michael Frerichs, Co-Chair
Erica Spangler Raz, Designee for Illinois Attorney General Kwame Raoul, Co-Chair
José Sanchez Molina, Designee for Illinois Lt. Governor Juliana Stratton
Jared Walkowitz, Designee for the Illinois Department of Commerce and Economic Opportunity
Hunter Wiggins, Designee for the Illinois Department of Financial and Professional Regulations
Emilia DiMenco, Appointee
Andreason Brown, Appointee
Dorri McWhorter, Appointee
Dale Morrissey, Appointee
Hon. Sheila Simon, Appointee
Butch Trusty, Appointee



**STATE OF ILLINOIS**
**OFFICE OF THE ATTORNEY GENERAL**

KWAME RAOUL
ATTORNEY GENERAL

Message from the Attorney General

The nonprofit sector fills unmet needs in countless unique and important ways. To accomplish your vital work, you must cultivate the public's trust in an organization's mission, its leadership, and the underpinning supportive resources.

As Attorney General, I see the value of a vibrant and reliable network of nonprofit organizations. I have dedicated resources to my office's Charitable Trust Bureau to assist both nonprofits in Illinois that accept donations and those who contribute to them.

Our team is available to work with organizations as they fulfill annual registration requirements. We are also able to work with the public to answer questions, educate and intercede as appropriate.

As servants of the public, we each have a role to play in providing and protecting resources that advance causes and serve communities. *The Illinois Nonprofit Principles and Best Practices* booklet by Forefront is a tool to that end. Together, we all can demonstrate the value of charitable endeavors and foster confidence so your work can continue.

Thank you for your diligence and your commitment to the highest standards and proven best practices.

Please do not hesitate to contact my office if ever you are in need of assistance.

Sincerely,

*[signature]*

**Forefront is Illinois' statewide association representing both grantmakers and nonprofits as well as their advisors and allies. Our mission is to build a vibrant social impact sector for all the people of Illinois. We provide education, advocacy, thought leadership, and facilitate collective action around issues that are important to our Members and to the sector.**

Currently, Forefront has over 1,100 Members. Our Nonprofit Members work in over 26 different issue areas across the state. Our Grantmaker Members include private foundations, such as family foundations and independent foundations, public charities, corporations, donor-advised funds, charitable trusts, and individual philanthropists. We also actively engage social entrepreneurs, impact investors, and B-Corps to spur innovation in the sector.

To help you do your work better, Forefront updated this Nonprofit Best Practices guide. This book is designed to help grantmakers and nonprofits make specific, concrete steps to ensure adherence to the high ethical standards and strong principals expected of them.

**Preamble and Purpose**

Nonprofit organizations serve a critical role in today's society by providing opportunities for advancing divested and underserved populations, facilitating volunteerism and civic engagement, and developing innovative approaches to solving complex issues--to name a few. In order to effectively serve the community, however, nonprofits must balance maintaining their commitment to excellence, equity, and accountability while successfully realizing their missions, managing resources, and executing proper governance. In order to help Illinois nonprofits strike this balance, set forth on the following pages are thirteen key principles of nonprofit governance, followed by best practices for consideration in effectuating on these principles.

Please note that there is no one-size-fits-all approach that must be followed; instead, you are encouraged to determine, in consultation with legal counsel and other applicable advisors, how best to integrate these principles into your nonprofit's governance and operations, as appropriate, and comply with all other legal requirements applicable to your organization.

These Nonprofit Principles and Best Practices are intended to apply generally to both grantmaking nonprofits and grantseeking nonprofits, unless otherwise specifically noted. Further, for purposes of these Nonprofit Principles and Best Practices, all references to "nonprofits" or "organizations" refer to public charities or private foundations that have registered with all applicable regulatory bodies, including, but not limited to, the Internal Revenue Service, the Illinois Attorney General's Charitable Trust Bureau, the Illinois Secretary of State, and the Illinois Department of Revenue.

## Mission and Governance

1. **The nonprofit has a clearly stated charitable, educational, or scientific mission that has been approved by the governing body and is in pursuit of the public good.**

   a. State the nonprofit's purpose in the mission.
   b. Ensure the mission is responsive to all relevant constituencies and communities to be served by the nonprofit.
   c. Ensure the mission is consistent with the "purposes" set forth in its organizational and governing instruments.

2. **The role, responsibilities, selection, and tenure of the governing body are clearly stated in the organization's governing and policy documents and understood by the governing body members.**

   a. Establish and adhere to written criteria and selection process for the governing body.
   b. Stipulate the length of a term and, if applicable, the number of consecutive and/or total terms individuals may serve.
   c. Consider the appropriate governing body size and committee structure to oversee the organization, encourage discussion, enhance efficiency, and ensure accountability.
   d. Formulate written descriptions detailing duties and responsibilities of governing body members and committees of the governing body.
   e. Meet as frequently as needed to fully and adequately conduct the business of the organization, including at least once a year in person.
   f. Maintain and distribute to governing body and committee members written meeting minutes reflecting the actions of the governing body, including minutes of governing body committees when taking action on behalf of the organization.
   g. Maintain systems and policies to ensure ongoing communications and efficient and effective decision-making during and between meetings of the governing body.
   h. Review organizational and governing instruments, including board-approved policies, no less frequently than every five years.
   i. Hire, set reasonable and appropriate compensation for, and annually evaluate the performance of the chief executive against goals and objectives agreed to by the chief executive and governing body. Document the basis for decisions. If this is a responsibility of a designated committee, a summary should be provided to the full governing body.

3. **The governing body ensures that its members are competent and knowledgeable, and includes and seeks diverse points of view and experience as needed to provide credible and effective oversight of all aspects of the nonprofit's work.**

   a. Ensure that governing body members (e.g., directors or trustees) have the requisite skills and experience to carry out their duties.

5

Mission and Governance (continued)

b. When filling vacancies on the governing body, consider how skills and experience of new members will complement existing expertise of governing members.

c. Provide governing body members with the tools and opportunities to develop in their roles, including appropriate orientation for incoming governing body members and on-going training on distinct roles and responsibilities, specifically including legal, financial, and fiduciary responsibilities.

d. Provide access to sufficient information and diverse perspectives (including, but not limited to, ethnic, racial, and gender perspectives) to inform decision making and carry out due diligence.

e. If not otherwise represented through the governing body, consult when appropriate subject matter experts or community representatives and/or include them on committees or advisory groups.

**4. The governing body regularly assesses the organization's mission and the effectiveness of the organization, its leadership, and its programs in achieving the mission.**

a. Regularly conduct a periodic governing body self-evaluation.

b. Set long- (multi-year) and short-term (annual) objectives to evaluate program and organizational effectiveness, and annually evaluate progress toward achieving objectives.

c. Review the mission and strategies being employed to achieve the mission every three to five years to determine whether they meet the needs of the organization's constituencies.

d. Regularly determine, in consultation with the chief executive, staff and, if the governing body deems necessary, outside experts and community representatives, whether programs are being properly evaluated, and employ appropriate evaluation techniques to ensure programs are being delivered efficiently and in accordance with best practices, are having the desired impact, and are effective in fulfilling the mission.

e. Solicit and act on feedback from program participants and constituents about the effectiveness of the programs and operations of the nonprofit.

f. Analyze and apply all meaningful data generated through periodic evaluations of the governing body, programs, and operations to ensure accountability and increase effectiveness.

g. Know and understand key financial metrics beyond just revenues; focus on the full costs to the nonprofit to provide services, operate programs, and run the organization overall.

**Legal Compliance, Fiduciary Responsibility, and Responsible Stewardship**

5. **The full membership of the governing body is responsible for the organization, and each member acts at all times in an ethical manner and in the best interest of the organization and the public.**

   a. Maintain policies and practices, including a written code of ethics, a conflict of interest policy, and a whistleblower policy to ensure the governing body and staff act in an ethical and legal manner.
   b. Educate the governing body and staff about what constitutes conflict of interest and prevent or manage any actual, potential, or perceived conflicts through disclosure, abstention, or other means.
   c. Develop and adhere to policies to prevent inappropriate influence where one or more stakeholders (e.g., employees or substantial contributors) of the organization are voting members of the governing body.
   d. Establish and adhere to a document retention policy that provides for the safekeeping of key organization documents and the prevention of their destruction upon receiving notice of a legal inquiry into the organization's operations.

6. **The governing body and staff are aware of and comply with all federal, state, and local laws, regulations and fiduciary responsibilities applicable to the nonprofit.**

   a. Educate the governing body and staff about basic legal, accounting, audit, and tax issues (including, but not limited to those concerning internal operations, grantmaking, fundraising, licensing, financial accountability, and labor and employment), as well as applicable provisions of federal, state, local, and international laws and regulations that are relevant to the organization's activities, including with respect to advocacy, lobbying, and political campaign activities.
      » The laws, rules, and regulations applicable to a nonprofit vary depending on the specific type of nonprofit (i.e., public charity or private foundation); accordingly, knowing what the laws are that are applicable to the organization at hand is critical.
      » By way of example, all nonprofits may (i) advocate for issues pertinent to their missions, and (ii) not engage in political campaign activity (such as supporting or opposing a political candidate); however, the rules on "lobbying" (as defined in the Internal Revenue Code) vary between public charities and private foundations.

Legal Compliance, Fiduciary Responsibility, and Responsible Stewardship (continued)

- » Public charities may engage in limited lobbying activity (in accordance with the applicable law).
- » Private foundations may not lobby (but they may fund organizations that do lobby, in accordance with applicable law).

b. Seek professional legal and accounting advice when needed to determine and support compliance.

c. Develop and adhere to written financial management policies adequate for organization size, nature, complexity, and mission concerning:
   - » Administrative expenditures
   - » Internal controls
   - » Purchasing
   - » Gift acceptance
   - » Fundraising expenditures
   - » Endowment spending
   - » Permitted and prudent investment and asset allocations

d. Provide the Form 990 or 990-PF and any 990-T to the entire governing body each year or otherwise ensure governing body members are familiar with the content.

e. Develop and adhere to a risk management plan and regularly consider the need for insurance coverage and other actions to mitigate risk, taking into account the nature and scope of the organization's activities and its resources.

7. **The governing body exercises active oversight of the financial affairs of the organization and sets policies to ensure that the organization's resources are used appropriately in furtherance of the organization's mission.**

a. Approve the nonprofit's budget each year and assess financial performance relative to the approved budget.

b. Maintain sufficient resources, including cash reserves, for effective administration of the organization and, if it solicits contributions, for appropriate fundraising activities.

c. Ensure that expenses are reasonable and necessary and incurred in pursuit of the mission of the organization.

d. Set compensation for chief executive officer, staff, and any others who may receive compensation at reasonable levels, considering factors including comparable data of similar organizations, nature of work performed, and time and skills required. Document the basis for decisions. Note that the governing body may, under limited circumstances, determine that it is appropriate or permissible to compensate members of the governing body; however, due consideration to the organization's governing documents, conflicts of interest policy, rules pertaining to excess benefit transactions or self-dealing, as applicable, as well as the factors enumerated in this section d. must be given and substantiated.

## Legal Compliance, Fiduciary Responsibility, and Responsible Stewardship (continued)

e. Maintain accurate financial records, prepare internal financial statements no less frequently than quarterly, and provide financial reports to the governing body, addressing any differences between actual revenues and expenses and budgeted revenues and expenses.

f. Assure that any interim and annual financial statements, federal tax returns, and reports to state authorities fairly represent the financial position and financial activities of the organization and comply with the organization's governing documents through review by the governing body, committee thereof, or authorized officer or agent, as determined by the governing body to be the appropriate person or persons to review such documents on behalf of the organization.

g. Determine whether an audit of the nonprofit is legally required (see Illinois Solicitation for Charity Act, Sec. 4., Annual Report of Charities). Even if not legally required, larger organizations are strongly urged to consider securing an audit by an outside public accounting firm or, at a minimum, a review of financial condition by an outside firm.

   » For organizations that have an audit, establish an audit committee; for organizations whose size or structure makes an audit committee infeasible, the full governing body or portion thereof that is knowledgeable about financial statements should oversee the audit or review.

## Communications, Accessibility, Privacy, and Disclosure

8. **The organization maintains appropriate cybersecurity safeguards, including with respect to protected or confidential information; ensures that its intellectual property is used solely in furtherance of its mission; and monitors and responds to online and third-party reputational risks.**

   a. Periodically conduct appropriate risk assessments with respect to the nature and scope of data collected and maintained by the organization.

   b. Respect and protect the confidentiality and privacy rights of individual clients, grantees, employees, donors, volunteers, governing body members, and others in the organization consistent with applicable law.

   c. Develop and maintain appropriate cybersecurity safeguards, which may include, but are not limited to, antivirus software, password protocols, firewalls, encryption, and internal controls regarding access to data.

   d. Understand and comply with applicable law governing disclosure and reporting of data breaches, disposal of confidential or protected information, and similar issues.

   e. Monitor and enforce restrictions on the use of organization's intellectual property by third parties, including fundraisers, vendors, contract parties, and charitable or similar databases.

Communications, Accessibility, Privacy, and Disclosure (continued)

    f. Review and keep up-to-date any profiles on third-party websites (e.g., GuideStar/Candid, the Illinois Attorney General's online charitable organization database, and Foundation Center).

    g. Be mindful of which third-party websites are linked to on the organization's website and the content that is posted thereon; certain content on the third-party site may be deemed attributable to the organization through linking (such as support or opposition for a political candidate that would be impermissible for the non-profit to directly post).

    h. Maintain appropriate policies and procedures that govern who is authorized to post content on the nonprofit's website or other social media platforms, and ensure that all posts comply with applicable law pertinent to the nonprofit.

    i. Designate one or more specified individuals act as the official "spokesperson" or "spokespeople" for the nonprofit, authorized to issue public statements on behalf of the organization (in response to inquiries or otherwise), and encourage such individuals to consult with legal counsel, as applicable, before issuing any such statements.

9. **The nonprofit responsibly collects, maintains, and properly disposes of personally identifiable information received from donors, employees, volunteers, and clients.**

    a. Entities that collect and maintain personally identifiable information such as social security numbers and financial information have a responsibility to protect the information. Nonprofit organizations may have personally identifiable information about donors, employees, volunteers, and clients.

    b. Take stock of the information collected and maintained by the organization. Periodically review the information the organization collects on forms and applications to ensure the organization is only collecting information necessary for its operations.

    c. Scale down and keep only the information the organization needs. If there isn't a legitimate need for collecting the sensitive information, don't collect or keep it. Phase out the use of SSNs for administrative purposes and internal identification where applicable.

    d. Protect the information the organization keeps. Develop data security policies to protect personally identifiable information the organization maintains in both paper and electronic files.

    e. Destroy client information in a secure way. Designate an employee or retain an outside company to oversee record keeping and disposal according to the Illinois Personal Information Protection Act, which provides guidance for safe and proper disposal.

10

Communications, Accessibility, Privacy, and Disclosure (continued)

f. Plan ahead. Create a plan for responding to data breaches including notification to the effected individuals and law enforcement.

g. Assess the organization's policies and procedures to ensure that the organization complies with applicable laws and data security best practices as technology changes.

**10. The nonprofit embraces transparency and accountability by making information about its mission, program activities and outcomes, and finances available to the public and communicates in a clear, timely, and proactive manner.**

a. Ensure all financial, organizational, and program reports and educational materials are complete and accurate in all material respects.

b. Understand the full costs of running the nonprofit's programs and operations, including the costs of the nonprofit's infrastructure (such as the cost of reasonable and necessary staff training, operational tools, and other costs that advance the nonprofit's mission), and be prepared to disclose and discuss those full costs with prospective funders.

c. Make available to the public basic informational data about the organization, which should include the Form 990 or 990-PF (or a website link to copies provided by other organizations such as Guidestar/Candid), and consider posting information useful to your constituents, such as grant guidelines, organizational and program reports and evaluations, and certain other relevant financial information. If the organization does not maintain a website, make them available upon request. If third-party providers post this information instead, review those sites periodically to ensure accuracy.

d. Make available the names of governing body members, officers, and key staff members.

e. Publish an address and the name of an individual to contact for information. Nonprofits that maintain offices, if feasible, should also publish a phone number, office location, and office hours. Whenever feasible, an email address for inquiries should be provided.

f. Respond to and act promptly on complaints.

g. Develop and follow policies defining timely response to complaints.

h. When resources permit, develop a social media strategy to ensure that relevant organizational and program information reaches all important and relevant audiences on a timely basis.

i. Remember that a nonprofit's audience is the community it serves. Build strong relationships with the community served, community leaders in that community, and other nonprofits serving that community (among others). Keeping the lines of communication open with these stakeholders and providing clear and transparent information builds trust, earns respect, and demonstrates integrity.

## Communications, Accessibility, Privacy, and Disclosure (continued)

11. **Nonprofits that raise funds from the public or from donor institutions maintain solicitation policies that reflect the organization's mission and use of solicited funds.**

    a. Represent the organization's policies and practices accurately and respect the dignity of program beneficiaries in all solicitation materials.
    b. Disclose important and relevant information to potential donors.
    c. Honor all statements in fundraising appeals about the use of a contribution (e.g., restrictions on use of fundraising proceeds, or commitments to allocate funds to certain programs).
    d. Respect the rights of donors in accordance with established professional standards such as "A Donor Bill of Rights."
    e. Ensure donated funds are used for purposes consistent with the donor's intent, whether as described in the relevant solicitation materials or as specifically directed by the donor, and maintain supporting documentation regarding donor's intent in the organization's files.
    f. Ensure that internal or external fundraisers are not compensated based on a commission or a percentage of the amount raised.
    g. Ensure compliance with state fundraising/solicitation registrations and requirements, including with respect to digital fundraising.
    h. Provide appropriate training and supervision of people soliciting funds to ensure they understand their responsibilities and applicable federal, state, and local laws, and prohibit techniques that are coercive, intimidating, or intended to harass potential donors.

12. **Grantmaking nonprofits establish, follow, and clearly communicate processes for receiving, reviewing, and acting on grant applications, and for monitoring and evaluating grants made; and act fairly and responsibly in considering the funding needs of potential grantees.**

    a. Make readily available a brief written statement including:
       » Program interests
       » Grantmaking policies, including types of funding provided
       » Geographic or policy restrictions
       » Preferred ways of receiving applications
       » Steps in the proposal review and due diligence process
       » Timetable for consideration of grant requests

Communications, Accessibility, Privacy, and Disclosure (continued)

b. Establish and maintain relationships with grantseekers based on mutual respect, candor, understanding, and fairness.

c. When reviewing potential grants, inquire about a non-profit's full costs of running its programs and operations, including its infrastructure costs; consider general operating support whenever possible and, if not, ensure that a reasonable and appropriate portion of grant proceeds can be utilized by the non-profit grantee to cover these costs.

d. Communicate clearly and on a timely basis with potential grantees.

e. Advise those affected by an adverse, negative funding decision or significant policy or procedure change within a reasonable period of time.

f. Clearly explain reporting and evaluation requirements and periodically review these requirements to ensure that they are necessary, appropriate, and provide sufficient benefit to the grantmaking organization to justify the time and effort they require of it grantees.

g. Ensure your diligence procedures are designed to evaluate nonprofit and program sustainability, operational health of the organization, and receipt of timely and accurate reporting to enable you to better understand your grantees and be better prepared to evaluate their future funding requests.

Managing Human Capital

13. **Invest in and perform appropriate diligence to get to know your people.**

   a. Consult with legal counsel to understand and abide by labor and employment laws applicable to the nonprofit's workforce, adopt appropriate policies addressing matters such as whistleblower matters and employee conduct, and develop, monitor, and enforce the procedures of an employee (and, if applicable, volunteer) handbook.

   b. Develop job descriptions and clear delegations of authority (under IL law, the governing body cannot delegate away its fiduciary duties), professional development and ongoing training of employees, volunteers, and staff.

   c. Conduct appropriate diligence (including, for example, background checks) of members of the governing body, employees or individuals serving as staff, and volunteers, and specifically those with oversight of and responsibility for financial matters or with signing authority on behalf of the nonprofit.

   d. Additionally, if the nonprofit has volunteers:
      » Conduct volunteer trainings on the nonprofit's mission and important rules and regulations applicable to the nonprofit.
      » Consider the nature of the volunteer work to be performed and conduct appropriate background checks on volunteers.

   e. Set clear performance metrics and annual reviews to determine performance.

## Number of Illinois Nonprofit Organizations

» All Nonprofit Organizations: 71,493
» 501(c)(3) Public Charities (includes some Religious Organizations): 47,613
» 501(c)(3) Private and Public Foundations: 6,153
» Other 501(c) Nonprofit Organizations*: 17,103

*includes Civic Leagues, Chambers of Commerce, Veterans Organizations, etc.

## Economic Impact of the Illinois Nonprofit Sector

» Employs 585,086 – over 11% of the state's workforce
» Generates more than $115.1 billion in annual revenues
» Holds assets of $329.7 billion
» Illinois Foundations annually give over $3.6 billion
» Illinoisans give $9.2 billion to charity each year



**Acknowledgements**

---

**Forefront is grateful for the input and expertise of the following individuals who helped with the creation of this updated guide.**

**Jim Parsons**
The Brinson Foundation

**Jodi Pellettiere Patt**
Quarles & Brady, LLP

**Scott McFarland**
Serve Illinois Commission on
Volunteerism and Community Service

**Theresa Geary**
Attorney General's Office

**Dawn Melchiorre**
Forefront

**Lisa May Simpson**
Forefront

**Bryan Zarou**
Forefront

This publication was made possible by a generous contribution from the Illinois State Treasurer's Office Charitable Trust Program.

For more information on how Forefront can support your work, go to
www.MyForefront.org.